UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

                   -against-                                           17-cr-0738 (LAK)

STEPHEN DECKER,

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

                                   Sarah Mortazavi
                                   Cecilia Vogel
                                   Assistant United States Attorneys
                                   GEOFFREY BERMAN
                                   UNITED STATES ATTORNEY

                                   James M. Branden
                                   The LAW OFFICES OF JAMES M. BRANDEN
                                   *Attorney for Defendant*

LEWIS A. KAPLAN, *District Judge*.

        On January 22, 2019, defendant pled guilty to of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, wire fraud in violation of 18 U.S.C. § 1343, and aggravated identify theft in violation of 18 U.S.C. § 1343 and 2. The conspiracy involved an elaborate attempt to steal the identify of a deceased woman in order to convert stock certificates registered in the name of the deceased, which were worth approximately $2 million. On June 12, 2019, this Court sentenced defendant to fifty-seven months' imprisonment, placing his sentence on the low end of the applicable Guidelines range of fifty-seven to sixty-five months. Defendant surrendered to the

Bureau of Prisons ("BOP") on September 23, 2019 for the service of his sentence.

Defendant now moves for compassionate release on the basis that he contracted COVID-19 in prison, although he has recovered, and allegedly is at a greater risk than others of complications arising from the virus. In the alternative, defendant asks that the Court recommend to the BOP that he be released to home confinement.

A court may grant compassionate release, once administrative remedies have been pursued as required by 18 U.S.C. § 3582(c)(1)(A), where (1) there are "extraordinary and compelling reasons" warranting a sentence reduction, (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a).[1]  The relevant policy statement, set forth in the Sentencing Guidelines at Section 1B1.13 and its application notes, provides that extraordinary and compelling reasons exist when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[2]  Whether the Court is bound by Section 1B1.13 following the enactment of the First Step Act is a disputed question.[3] However, the Court need not resolve this dispute.  Defendant's application for compassionate release fails regardless of whether the policy statement is controlling.

The parties agree that defendant has exhausted his administrative remedies and that

---

[1]  18 U.S.C. § 3582(c)(1)(A)(I).

[2]  U.S.S.G. § 1B1.13, cmt.1(A)(ii).

[3]  *See United States v. Canales*, No. 16-cr-212 (LAK), 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020).

his motion for compassionate release thus is ripe for the Court's consideration.[4]   The government disputes, however, that defendant has demonstrated there are extraordinary and compelling circumstances that warrant a compassionate release.  They argue also that, in any event, the Section 3553(a) factors do not favor a reduction in defendant's sentence.

On May 6, 2020, defendant tested positive for COVID-19 and was placed in isolation.  According to BOP medical records, defendant was asymptomatic.  On May 22 and 27, 2020, defendant tested negative for COVID-19.  After his second negative test result, defendant on May 27, 2020 was moved to a recovery floor.  He tested negative for COVID-19 for a third time on June 2, 2020.  As of the government's June 11, 2020 letter, the BOP had indicated that defendant would remain in quarantine for another two-week period.

Defendant suffers from hypertension.  BOP medical personnel checked his blood pressure daily between May 6, 2020 and June 2, 2020  Despite receiving medication for his hypertension, defendant's blood pressure was elevated during a number of those daily checks. According to defendant's motion, his blood pressure is "extremely high" and "unstable."[5]   In addition to hypertension, defendant has reported that he has situational breathing problems (e.g., to mold, dust, and germs in the prison) and that he is obese, among other health concerns.  In light of the COVID-19 pandemic and his infirmities, his hypertension in particular, defendant argues that there are extraordinary and compelling reasons justifying an early release. He argues also that he may become reinfected with the virus if he remains incarcerated.

The Court is mindful that defendant has unstable and elevated blood pressure and

---

[4]

DI 159 at 1 n.1.

[5]

DI 157 at 5.

4

that hypertension has been associated with an increased risk of complications from COVID-19. But this is not enough to warrant compassionate release, even in the present circumstances. As this Court has said previously, "affliction with various medical conditions alone is insufficient to justify compassionate release."[6]   Morever, according to defendant's submission, he "appears to be managing" his hypertension while incarcerated.[6]   And fortunately, while defendant was infected with COVID-19, the record does not suggest that he suffered any complications from hypertension. To the contrary, he was asymptomatic.

Defendant contends that he could be reinfected with the virus because it is "impossible" to maintain social distancing at Fort Dix Federal Correctional Institution, where he is incarcerated. He notes that to date, 42 of 190 inmates at Fort Dix have contracted COVID-19, and that the warden at Fort Dix has acknowledged that "social distancing is not possible" in the facility.[7] The Court recognizes the difficulties of social distancing while incarcerated, but it is not in a position to evaluate the likelihood that defendant – or anyone – could be reinfected with COVID-19. However remote or probable, the possibility of reinfection is speculative, as no definitive medical conclusions have been reached on prior infection with COVID-19 results in immunity from future infection (as is the case with some but not all viral infections) and, if so, the duration of any such

---

[6]

United States v. Merlo, No. 17-cr-0738 (LAK), 2020 WL 3001039, at *2 (S.D.N.Y. June 4, 2020); see also United States v. Rodriguez, No. 16-cr-67 (LAP), 2020 WL 1866040, at *4 (S.D.N.Y. Apr. 14, 2020) ("[Defendant] has not set forth a basis to believe that there are extraordinary and compelling reasons for him to be released early. All he has done is to note that he has asthma, he is in prison, and there is a COVID-19 outbreak nationwide. That is not enough.").

[6]

DI 157 at 5.

[7]

Id. at ECF 53; DI 160 at 1.

5

immunity.

Even if defendant had demonstrated that his medical conditions presented "extraordinary and compelling reasons" for a reduction in sentence, the application of the Section 3553(a) factors do not favor an early release.   At sentencing, the Court empathized the gravity of defendant's crime and the opportunities defendant had, and ignored, to desist from the scheme, of which he was one of the prime instigators.[8]  In light of this behavior, reducing defendant's sentence to eight and a half months would not "reflect the seriousness of the crime," as required by Section 3553(a).[9]  Nor would a reduction be consistent with Section 3553(a)'s deterrence objectives and the need to "provide just punishment for the offense."[10] Defendant has served only a small fraction of his fifty-seven month sentence, which already fell at the bottom of the applicable Guidelines range. Any further downward change is unwarranted.

The additional "extraordinarily mitigating facts" cited by the defendant, such as the non-violent nature of the crime, do not shift the balance of the Section 3553(a) factors.[8] These facts were considered at sentencing and informed the Court's decision to sentence defendant to fifty-seven months.   That he "was in financial and emotional extremis" during the time in which committed his crime, "made a full confession," and had no prior offenses does not undermine that

---

[8]     DI 118 at Tr. 12:22-14:23.

[9]     18 U.S.C. § 3553(a).

[10]     *Id.*

[8]     DI 160 at 3-4.

6

his crime was serious or the need to provide just punishment for the offense.[9]

Accordingly, defendant's motion for compassionate release (DI 157) is denied.  The Court takes no position on defendant's request to be released to home confinement, relief that can be granted only by the BOP.

SO ORDERED.

Dated:      June 17, 2020

_____
Lewis A. Kaplan
United States District Judge

---

[9]      *Id.* at 4.